May it please the Court, Chloe Dillon of Federal Defenders of San Diego, on behalf of the appellant, Mr. Martinez-Gonzalez. With the Court's permission, I'd like to reserve three minutes for rebuttal. Can you put the microphone right in front of you and speak into it? Thank you very much. Thank you for letting me know, Your Honor. The removal order entered against Mr. Martinez-Gonzalez was fundamentally unfair. Mr. Martinez-Gonzalez requested a prompt hearing and waived what he thought would be a ten-day delay. But then waited 34 days and was given a defective advisal on his eligibility for voluntary departure. His right to apply was further conditioned on an additional unstated period in detention. These circumstances unreasonably discouraged Mr. Martinez-Gonzalez from applying and interfered with the purported waiver of appeal in this case. The series of events leading to this removal order began with Mr. Martinez-Gonzalez indicating on the back of the charging document, the notice to appear, that he wanted a prompt hearing. To quote, to expedite a determination in my case, I request an immediate hearing. Mr. Martinez-Gonzalez then waited nearly five weeks to be presented to a judge, without access to counsel, without information on his rights and removal proceedings, but with the firm understanding that fighting one's case could result in prolonged detention. When he appeared with eight other individuals for his hearing 34 days later, the playing of a prerecorded advisal informed him of a novel policy instituted by the immigration judge at the Illinois Immigration Court, requiring postponement for a determination on pre-conclusion voluntary departure. From that recording played by a tape player, if you tell me that you do not wish to postpone your case to have a hearing on voluntary departure, then you would be refusing the opportunity to request that relief. Even though, just down the road at the Florence Immigration Court, IJs were deciding applications for pre-conclusion voluntary departure during the hearing, as the regulation provides. Following this recording, Mr. Martinez-Gonzalez was given a defective advisal on his eligibility for voluntary departure. That advisal, quoted directly from the government's translation, as Mr. Martinez-Gonzalez heard it was, Sir, the only other form that of dispensation available for which you may qualify is voluntary departure. Following that advisal, the immigration judge again made clear to- I think you can highlight facts maybe as I ask some of the questions, if you'd like. I understand what occurred here, and the question is, did it meet the adequate level of colloquy of advisal? And the IJ told Mr. Martinez-Gonzalez that he may be eligible for voluntary removal, and I would like to know your position in light of United States v. Melendez-Castro, because it seems- he should have done a much better job, and that's what we're trying to determine here, whether it was enough in advising him of his rights at that moment. But I'm just curious, in light of Melendez-Castro, this statement appears to be sufficient to inform him of his eligibility of removal, and I guess I would like to know why you don't think that statement was sufficient. Yes, Your Honor. There is a clear distinction between the language used in Melendez-Castro, which is directly quoted in the opinion, and the language that was used in this case. They both used the may, but on page 7 of my reply, and it's the excerpt of record at 100, it's the actual advisal, as Mr. Martinez-Gonzalez heard it was, sir, the only other form that of dispensation available for which you may qualify. And that is convoluted, and it's burying his possible eligibility. But in any case, may is not the same as are. And what you have in this case is an individual who no one has ever disputed was clearly eligible for voluntary departure. And so the question is- Well, but that's the whole question for me, because may is not the same as are, and he could have and probably should have said are to make it more clear, but under our case law, it looks like may may be sufficient, and I'm trying to figure out why it wouldn't be in this case. You're saying that in light of the way that it was said that that's not enough? Is that what you're saying? That's one way. And so just to be clear, the advisal is one factor that the court is considering in whether Mr. Martinez-Gonzalez was unreasonably discouraged. We do contend that it's an independent basis because of the requirement in the regulations that the immigration judge inform of apparent eligibility. So it is an independent basis, but I also want to talk about the fact that the sum total of the circumstances in this case unreasonably discouraged Mr. Martinez-Gonzalez. And one of the other arguments you make is that he had been in detention for 30 days. Is that correct? Thirty-four before the first hearing, before being presented to the judge. But in our Denmore v. Kim case, or that's not our case, the Supreme Court case, held that a six-month pre-hearing detention is constitutionally permissible. So I guess I would just like to hear what your views are in light of that case, because I'm trying to figure out how that would help you. Yes, Your Honor. So in Denmore, the representations by the government that the Supreme Court relied on was actually closer to five months. They said, well, this was a little bit longer, but the respondent, the individual in that case, did request continuance, and so six months, that's okay. But that was also considering a period of detention that was for the entire administrative proceedings up through a final decision from the Board of Immigration Appeals. So that was from the service of the notice to appear up through a final decision before the Board of Immigration Appeals. Denmore did not address how long an individual may permissibly remain in detention before a first hearing, and in any case, the representations by the court, by the government in Denmore, have been strictly construed by this court in every instance in which this court has had the opportunity to consider Denmore. But in addition to that 34-day delay before he was first presented to a judge, then at that hearing, what he is told more than once is that if you wish to apply for voluntary departure, you must, it is an unwavering requirement, agree to a further period in detention in order to apply beyond those 34 days. And he didn't tell Mr. Martinez-Gonzalez how long that would be. It was left unstated. Did he know how long that would be? He did not know how long that would be. I mean, did the IJ know how long it would be? Well, what the IJ then says to the district court in this case is that it would have been an additional two to three weeks more, but he did not say that to Mr. Martinez-Gonzalez. That was his declaration, right? That's his declaration. I want to go back to Melendez-Castro. Why doesn't that help you? I mean, in that case, the IJ actually said you are eligible in his first sentence, but then discouraged him or was deemed to have discouraged Melendez from actually applying by telling him that he had a criminal record and he wouldn't get it. Here, it was May, and I opposed it, and then he talked about, you know, do you want your case postponed or do you want your case completed right now, which seems to me to be the same sort of discouragement. I would agree, Your Honor. I think that this... But you're not arguing. You didn't argue it that way. I did, Your Honor. I do believe that Melendez-Castro controls this, and I do believe that Melendez-Castro says that you cannot unreasonably discourage and condition the application for voluntary departure, and it also says that it adheres to ARIETA and the line of cases that says the regulation is clear. You have to inform the individual of their apparent eligibility, and it also says this is not just a regulatory requirement. This is a due process requirement because these are pro se detained individuals without counsel who have no means of learning about their eligibility on their own. Counsel, if I might, in indicating that if he wanted voluntary departure, and in light of the government's indication that they opposed it, that some weeks would have to go by before a hearing could be held to resolve that particular contest, I think the government has argued and will argue that that delay was simply an administrative necessity because of the sheer volume of matters that they are dealing with. Is it your position that that argument of just administrative necessity cannot factor into the due process analysis? The government simply has to do better than that, that that amount of delay is simply indefensible and should not be factored into the due process analysis? Yes, Your Honor, and I'd like to answer your question before I reserve some time for rebuttal. Yes, and this Court's precedent, the Ninth Circuit precedent, tells you that that kind of delay must be charged to the government and not to detained individuals. That's in Coe v. Thurman, and that's also, Coe took that directly from the Supreme Court's decision in Barker v. Wingo. Overburdened courts and administrative delays are a cost that must rest with the state, must rest with the government, and not with detained individuals. Thank you, Counselor. Good morning, Your Honors. Matthew Sutton on behalf of the United States. In this case, the record shows that the immigration judge clearly advised Mr. Martinez-Gonzalez of three things. First, beginning in the prerecorded advisal, he informed Mr. Martinez-Gonzalez of the benefits of voluntary departure. Are you talking about the group advisal? That's correct, Your Honor. And I can point this Court's attention to supplemental excerpts of record 149 to 150. And at that point, the immigration judge says, if voluntary departure is granted to you, it would permit you to avoid certain consequences of an order of removal, and it would be easier to be able to return to the United States in the future. That type... Secondly, the immigration judge talks about the process, about how an alien would request voluntary departure. Yeah, but that's not the same as telling him you are eligible for pre-conclusion voluntary departure. Your Honor, I would submit that those two are very closely related, and you have to look at the prerecording advisal taken in conjunction with the individual... Back up for a second. I mean, we're having seen this issue a lot. Why aren't the immigration judges just told, you've got to advise them of these particular rights and do it unequivocally? I sympathize with the... It's very frustrating to do this on a case-by-case adjudication and little changes in the language. Why don't they have a... I mean, we have Rule 11 in the federal rules of, I guess, criminal procedure. This is exactly what you have to advise for a guilty plea. Why can't you just fix this or get your superiors or somebody to fix the problem so that every IJ has a list of what exactly they're supposed to advise these immigrants at these deportation hearings? I certainly sympathize with the court's concern. The Department of Homeland Security does take that very seriously, and I would submit that the record in this case shows that the immigration judge did comply with the regulation in this case, and the regulation directs the immigration judge to determine whether to advise the alien of his apparent eligibility to apply for a leave. That's the first drawing. And then second, the opportunity to make that application during the hearing. That's exactly what the immigration judge does. Counsel, is it your position that the statement, you may be eligible, is equivalent to you are apparently eligible? Yes. Is that your position? That is the government's position, and I think when I was going back to the part of how the pre-recording advisal and the colloquy fit together, and it provides another basis to show that there's no confusion here from Mr. Martinez-Gonzalez of whether he is eligible. Because in the pre-recording advisal, the immigration judge says, if I determine you are eligible to receive this relief, I will ask you if you want to delay this hearing so you can have an opportunity for more process and to engage in that hearing at a later date. So it's those two components taken together. The word may, you may be eligible, is enough on its own to satisfy the Melendrez-Castro's requirement and the regulations requirement. But then taken in conjunction with the pre-recording advisal where the immigration judge says, this is the procedure, and if you're eligible for this type of relief, I will ask you these series of questions. That's exactly what the immigration judge did in this case. And lastly, the immigration judge told Mr. Martinez-Gonzalez about what the basis is that he would rely on for granting voluntary departure. The record also shows that the immigration judge clearly and unequivocally asked Mr. Martinez-Gonzalez if he wanted to apply for this relief. Mr. Martinez-Gonzalez's decision not to apply for that relief in 2009 cannot be a due process violation here in 2014. And let me talk about the case law. But here, I mean, would you agree, I mean, perhaps the IJ didn't tell him he didn't qualify, but he certainly didn't encourage him and arguably discouraged him. I would disagree with that characterization that the immigration judge discouraged him. And I think the basis of how an immigration judge would discourage an applicant would be illustrated in the Melendrez-Castro case, where that immigration judge said, you are eligible to apply for voluntary departure, and then immediately following that said, my policy is I do not grant voluntary departure for anyone who has a criminal record, who has criminal convictions here in the United States. In that case, Mr. Melendrez-Castro had already, as part of his notice to appear, admitted that he had suffered criminal convictions here in the United States. So the court was correct to say it was a foregone conclusion, because why expect an alien in that circumstance to apply for a relief where the judge clearly has said, I will not grant it under any circumstances. That's not the case. I understand that. In the scenario you're describing, that's the Melendrez-Castro. But here, unfortunately, the way the IJ did this, it puts us in a position of questioning whether it's close enough to Melendrez-Castro or not, because he doesn't say you are eligible. He says you may be eligible, and then immediately tells him how much time he's serving, and it would be weeks before he gets a hearing. So that's discouraging. And my question is, is it discouraging enough? I guess you're arguing that it's not, but why don't you try to convince me that it's not. Let me take a stab at it this way. The reason for the delay that the immigration judge said is, this is not an arbitrary and capricious reason for the immigration judge offering to delay the hearing for the alien to pursue voluntary departure. As it's noted in the immigration judge declaration on supplemental acts of record 178 and 179, he explains exactly why he adopted this procedure. And it's the procedure to allow the alien more process and not less. And that's to allow the alien, because remember, it's the alien's burden to establish his equities qualify for voluntary departure. If he so clearly was eligible, he could have determined that very easily. And I guess I have a related question for you. You concede now, right, that Martinez was eligible for pre-conclusion voluntary departure? He appeared to be eligible. That's what the record indicates. Okay, but the government opposed it. What was the grounds? The government immediately made it clear that it was going to be an uphill battle. And the consequences, as you point out, are very severe. Well, the government is certainly, you know, this is a discredit. Whether the immigration judge grants voluntary departure is a discretionary decision left to the immigration judge. Both parties, you know, absolutely should have the opportunity to make their case why it should or shouldn't be granted. What was the basis for the government's opposition? Well, it's not clear. I mean, obviously, it's not stated in the record. But if I had to speculate, it would appear to be Mr. Martinez Gonzalez's criminal history. And from the age of 18 to the age of 27, he acquired four criminal convictions, three misdemeanors, and one felony conviction. So it was an escalating series of criminal contacts with the United States, all of them except for his theft conviction related to his use of methamphetamine, which is an extremely dangerous controlled substance. Obviously, that I'm sure was part of the reason that the government would oppose Mr. Martinez Gonzalez's application for voluntary departure. And that's one of the factors that the immigration judge would have to analyze when the judge is analyzing the positive and negative equities of the alien, the nature, recency, and seriousness of the criminal history. But do you agree that he had a plausible case for relief? I would dispute that. I would first start by saying that the district court did not make that finding and that if the court were inclined to decide this case against the government, that we would ask that a remand to the district court to allow the district court to conduct that prejudice analysis. Counsel, how do we factor into the due process analysis the way in which the defendant here was experiencing what was happening to him? There was this long delay before he gets to the group process. He's told that if he invokes his right to have a hearing on voluntary departure, it's going to take more delay. He's already heard that the government's going to oppose it. So wouldn't it be reasonable for him, and I'm asking you if that's the appropriate standard, how a reasonable person would experience what's happening. Wouldn't it be reasonable for him to think this is all hopeless and I'm going to have to just wait this out for no particular reason, so why invoke this right when it seems so conditional? I'm already told the government opposes it. I'm just going to have to sit around and wait for no reason. Wouldn't that be a reasonable reaction to what's happening to him? I certainly understand that reaction, but the Supreme Court considered that very argument in Denmark and in footnote 14 rejected it. And the Supreme Court stated that our legal system is replete with situations where individuals have to make difficult decisions. One of those decisions, especially in Denmark, is whether an alien wants to remain in custody. So that is certainly a dilemma that an alien faces in these proceedings. Ultimately, though, that's not a controlling or determinative factor because the Supreme Court has rejected that. This is a period of delay well within that six-month presumptive period of reasonableness that the Supreme Court set out in Denmark and that the Ninth Circuit has adopted time and time again in addressing the length of detention as it affects an immigrant's detainee's rights. So I certainly understand those concerns. Ultimately, the Supreme Court has rejected those and that is not a basis to show a due process violation in this case. Now, if you're talking about a delay of a period of months, past six months, a year, multiple years, there's case law in the Ninth Circuit where they have said that's something to weigh and factor and would help and be a benefit to Mr. Martinez-Gonzalez. Thirty-four days, not enough. Well within that period of time. Continuing this hearing briefly to allow Mr. Martinez-Gonzalez the ability to marshal his positive equities and present them to the immigration judge, I would submit as a sign that the immigration judge is taking his job very seriously to consider the positive and negative equities of the alien and to make a full and fair decision on the merits. Well, just a second. You're saying what the IJ did here was the ideal, was the model? It was not the ideal in the sense that his overall advisal was not ideal, but his reason for temporarily delaying the procedures when an alien requested voluntary departure, I believe is not, and I would submit, is not prejudicial and in fact actually serves a benefit, a potential benefit to the alien. And are the IJs given any training or directives or anything to say when they're informing people when it relates to due process that they should be clear that they have rights? I'm just trying to figure out what's going on with respect to the government side. My understanding is the Department of Homeland Security does provide immigration judges with that training. They're certainly well aware of the case law that's coming out of this court, and they need to first comply with their own agency regulations and second of all, comply with the decisions of the Courts of Appeals and the Supreme Court. So unless the Court has any further questions for me, I'd be prepared to submit on the briefing. All right. Thank you, Counsel. You can have two minutes. The government went two minutes over. Thank you, Your Honor. So to begin, we went over what the contorted and sort of confusing advisal was. Upholding that kind of a vague advisal increases the gap that already exists between represented and unrepresented aliens, and lowering the bar for advisals really kind of turns precedent on its head because what this Court's precedent, as well as the Eighth Circuit and the Seventh Circuit say, is that an IJ's duty is heightened in the case of a pro se detained alien, not reduced. And so an eligibility does not turn on and is not synonymous with the discretion to deny that relief. And so just because the immigration judge has the discretion to ultimately deny this does not mean that he can discourage the person's application from the get-go. And what the immigration judge did was always tether the right to apply, the right to appeal, immediately tether that to remaining in custody longer. And what was made crystal clear was that this person would be released today if they renounced their rights, whereas if they exercised them, remain in custody. But ultimately, and I guess we're ending where we started, we look at Melendez-Castro, which is our guidance here, and the real holding there and the key phrase out of that case is, for me, did the IJ in essence tell him he did not qualify under the totality of the circumstances? And are you saying that the IJ in essence told him he did not qualify? What I am saying is that all of the circumstances considered together unreasonably discouraged him from applying in a way that was not fair. And that the advisal itself was also defective because this is a person who was clearly eligible, and informing that person of their apparent eligibility is not couched in that kind of a confusing, contorted, conditional way. May be necessarily means, may not be. If I'm Mr. Martinez-Gonzalez, I'm in the same position that I was when I walked into that courtroom, which is I think I could or I could not be eligible for this form of relief. Not that I am. Counsel, if I might, but how if you do talk a lot about the delay, the 34 days, and then the further delay to get a hearing on the voluntary departure issue, and you want to factor that into the due process analysis, but as opposing counsel has indicated, the delays we have here, they themselves do not violate any constitutional standards. So how can we factor the delays into the due process analysis? Well, Your Honor, they do violate a constitutional standard. And DeMore did not address how long someone would have to wait in order to get to their first hearing, and this is also a period in custody that is outside the representations that were made in DeMore. And what this court has consistently concluded in looking at DeMore and looking at the statute and regulations is that they do not spell out all of the time limits that are required by due process. And so this is a constitutional violation, but the court need not reach the constitutional violation in order to conclude that 34 days is just simply too long, and under the circumstances of this case where the only reason that the government has proffered for delaying the case is the overburdened court. No one believes that there was any reason to delay this case other than the typical delays associated with an overburdened and staffing issues at Eloy Immigration Court. All of the facts were there. The law was undisputed. Mr. Martinez-Gonzalez had admitted all of his criminal history, and that criminal history was minor in nature, and absolutely he was a plausible candidate for voluntary departure. I'd refer the court to the cases cited in Visayo-Martinez, which is at page 32 of the reply. And with respect to, if I may just have a couple more seconds, with respect to what the immigration judges are doing now, this declaration that was prepared here in the district court that I.J. indicated this is still his standard practice, this is what he's still doing, and that was the I.J.'s declaration many years after this hearing, or three years after this hearing took place, maybe more. And so there is no indication that they have changed the practice, and it is our understanding, having recently spoken with individuals who regularly practice before these courts, that this is still absolutely the typical practice at the Eloy Immigration Court. All right. Thank you, counsel. United States v. Martinez to be submitted.
judges: Lipez, Wardlaw, Murguia